**CK LIQUIDATION CORP., Debtor.**

**Robert White, Appellant,**

v.

**John A. Burdick, Jr., Chapter 7 Trustee, and CK Liquidation Corp., Appellees.**

**BAP No. MW 04–060.**
**Adversary No. 03–44906–HJB.**

United States Bankruptcy Appellate Panel for the First Circuit.

March 11, 2005.

Robert White, pro se, on brief for Appellant.

Michael Goldberg, on brief for Appellee Chapter 7 Trustee.

Before LAMOUTTE, CARLO, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

This matter is on appeal from a bankruptcy court order (the "Order") sanctioning unsecured creditor Robert White (the "Appellant") pursuant to Bankruptcy Rule 9011(c)(1)(B) for filing a motion with arguments not warranted by existing law or by nonfrivolous argument to extend or modify existing law, and for the improper purpose of harassing estate functionaries. We conclude that the court did not err in concluding that the Appellant had violated Rule 9011, and that the court did not abuse its discretion in ordering the Appellant to pay $2,500. As such, we **AFFIRM** the Order.

## BACKGROUND

CK Liquidation Corporation (the "Debtor") filed for Chapter 11 bankruptcy protection in August, 2003. On August 29, 2003, the Debtor requested an order authorizing the sale of the Debtor's assets, to which the Appellant objected. On November 7, 2003, the bankruptcy court overruled the Appellant's objection and issued an order approving the sale of substantially all of the Debtor's assets to Kubotek Corporation. The Appellant appealed the sale order to the district court.

The Debtor's bankruptcy case was subsequently converted to Chapter 7, and a Chapter 7 Trustee (the "Trustee") was appointed. On August 13, 2004, the Appellant filed a motion to vacate the sale order (the "Motion to Vacate") on the grounds that counsel to the Debtor and counsel to the Official Committee of Unsecured Creditors ("Ropes & Gray" and "Sherin and Lodgen," respectively; "Estate Counsel" collectively) committed fraud on the court by representing that the $750,000 in sale proceeds would be used for the benefit of creditors, when in fact much of the proceeds would be used to pay Estate Counsel's fees and costs. The court denied the Motion to Vacate, noting that "Administrative claimants are also creditors who are entitled to share in the proceeds held by the estate." The Appellant appealed the order to the district court.

Around the same time, Ropes & Gray filed a final application for fees and costs, to which the Appellant did not object. The bankruptcy court issued an order approving the application. Sherin & Lodgen filed an interim fee application, which the bankruptcy court approved, and to which the Appellant did not object.

Thereafter, the Appellant filed a motion to disgorge (the "Motion to Disgorge" or the "Motion"), asking the court to disgorge all fees and retainers paid to Estate Counsel. The Motion alleged that because the court had determined that Estate Counsel became creditors to the estate while the case was in Chapter 11, Estate Counsel therefore had interests adverse to the estate and were not disinterested persons as required by §§ 327 and 1103 under which they were hired. The Motion cited § 101(14)'s definition of a "disinterested person" as "Not a creditor," and asserted that Estate Counsel's fees were the main expenses depleting the estate. The Motion concluded that because Estate Coun-

sel must represent themselves when applying for fees, they were competing with and had an adverse interest to other creditors, and therefore had an actual conflict of interest.

Estate Counsel filed a Joint Opposition to the Motion to Disgorge. The Joint Opposition stated that the Appellant is a "disgruntled creditor" whose attempt to purchase the Debtor's assets had failed and who had subsequently sought to "sabotage" the Debtor's Chapter 11 and Chapter 7 cases by filing frivolous motions and appeals. The Joint Opposition argued that Estate Counsel did not become disinterested persons merely because they had incurred unpaid post-petition fees, citing the Bankruptcy Code's definition of "creditor" and explaining that Estate Counsel satisfied none of criteria found therein. The Joint Opposition further argued that Estate Counsel's claims arose under §§ 503(b) and 330(a), and that the Bankruptcy Code specifically exempts such administrative claims from § 348(d) claims. The Joint Opposition further argued that the order allowing the Debtor's counsel's final fee application (to which the Appellant did not object) was *res judicata* to the Motion to Disgorge, and that the Appellant was collaterally estopped from seeking disgorgement of the Chapter 7 Trustee's fee application as the Appellant had failed to object to that application.[1]

The Appellant filed a response to the Joint Opposition, which set forth a more developed argument than the Motion to Disgorge and included some citation to legal authority. The bankruptcy court denied the Motion to Disgorge for the reasons stated in the Joint Opposition, and further ordered the Appellant to show cause why he should not be sanctioned pursuant to Rule 9011(c)(1)(B).

The Appellant filed a Response to the show cause order, arguing that none of the defenses raised in the Joint Opposition have merit, and indeed that Estate Counsel's interpretation of the Bankruptcy Code renders the Code ineffective. The Response further argued that there is no stated or implied time bar in § 328(c) preventing disgorgement after approval of the final fee application, that the court's finding that " 'attorneys are creditors too' " is new evidence justifying a § 328(c) challenge to Estate Counsel's fees, and that said finding is now "law of the case" which conflicts with Estate Counsel's assertion that they are not creditors for purposes of the "disinterested persons" test. The Response admits that the Motion to Disgorge was deficient because it did not plead facts sufficient to prove the adverse interests of Estate Counsel, but argues that the deficiency was cured by his response to the Joint Opposition. The Response concluded by asserting that the Motion to Disgorge was not filed for an improper purpose, but rather to resolve conflicts in the court's own rulings; that the Bankruptcy Code supports the motion's legal conclusions and supports the establishment of new law governing the definitions of attorneys, creditors, and conflicts of interest; and that the motion's factual assertions are "based on the law of this case."

The Trustee also filed a response to the show cause order, asserting that the Appellant's Motion to Disgorge was one of eight actions brought by the Appellant in the past year with the intent to harass the Trustee and delay administration of the proceeding to compel the Trustee to reach a financial settlement with the Appellant.

---

1. The Panel need not reach the issues of whether the order approving Ropes & Gray's final fee application is *res judicata* to the Motion to Disgorge, or whether the Appellant is collaterally estopped from challenging Sherin & Lodgen's interim fee award.

The Trustee's response stated that the Appellant "has unapologetically sought monetary payment from the estate in exchange for resolving his pending appeals," and attached as an exhibit e-mail correspondence from the Appellant expressing his willingness to settle one of the appeals pending in district court. The Trustee's response asserted that the Appellant's arguments were "repetitive, improper and meritless," and that his actions were made in bad faith and may have violated his fiduciary duty as a former member of the Creditors' Committee and as a litigant appealing court orders on behalf of a class of creditors. The Trustee calculated that the Trustee had incurred fees and costs totaling almost $32,000 for defending the Appellant's various actions. The Trustee's response sought injunctive relief in addition to any monetary sanctions the court may order.

The bankruptcy court held a hearing on the show cause order. The court explained that it issued the show cause order because Estate Counsel had "heartily and repeatedly" complained that the Appellant's pleadings were meritless, and that the court was struck in particular by the meritlessness of the Appellant's motion to vacate the sale order and the Motion to Disgorge. The court further explained that it had not issued a show cause order in connection with the motion to vacate the sale order because the Appellant was *pro se*, but issued one in connection with the Motion to Disgorge because it twisted language from a court order, and because any attorney would have known that such an argument was "completely unsustainable." Lastly, the court explained that it wanted to make sure the Appellant understood it was no longer safe to file frivolous matters that were going to deplete the estate.

The Appellant first defended the merits of his motion to vacate the sale order, arguing that the district court's expression of sympathy for unsecured creditors in its recent decision upholding the sale order indicated that the Motion to Vacate had merit. The Appellant conceded, however, that his motion to vacate was "wrong" because he had misunderstood the facts. The Appellant went on to defend the Motion to Disgorge, stating that while it may have been deficient and awkward, it was not without merit.

The court rejected these defenses, and found that the allegations made in the Motion to Disgorge, particularly in the context of the Appellant's previous filings, (1) were not warranted by existing law or by non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and (2) were made for the improper purpose of harassing estate functionaries. The court sanctioned the Appellant and ordered him to pay $2,500 to the Trustee, but denied Estate Counsel's request to enjoin the Appellant from making further filings. This appeal followed.

### JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.' " *Id.* (*quoting In re American*

*Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

■ An order imposing Rule 9011 sanctions is final when the matter out of which it arose becomes final. 10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9011.10 (15th ed. rev.2004). Here, the sanction order arose out of the Appellant's Motion to Disgorge, which became final when the court denied the motion. *See Bank of New England*, 218 B.R. at 645.

### STANDARD OF REVIEW

■ We review the bankruptcy court's conclusions of law *de novo*, and findings of fact for clear error. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 571 (1st Cir. BAP 2002); *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 830 (1st Cir. BAP 1999). If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced

that it would have weighed the evidence differently as a trier of fact. *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504.

■ We review the bankruptcy court's decision to impose Rule 9011 sanctions and fine the Appellant $2,500 for manifest abuse of discretion. *See* Fed. R. Bankr.P. 9011(b); *1095 Commonwealth Corp. v. Citizens Bank of Mass. (In re 1095 Commonwealth Corp.)*, 236 B.R. 530, 539 (D.Mass.1999); *Collier on Bankruptcy*, ¶ 9011.07. Abuse of discretion occurs when the court ignores a material factor deserving significant weight, relies upon an improper factor, or makes a serious mistake in weighing proper factors. *Colon v. Rivera (In re Colon)*, 265 B.R. 639 (1st Cir. BAP 2001) (citations omitted).

### DISCUSSION

#### A. Disposition without Argument

The Panel has unanimously determined, after examination of the briefs and appendix, that oral argument is not needed in this case because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr.P. 8012. The Panel's decision to dispense with oral argument may be announced by the Panel at the time the decision on the merits is rendered. 1st Cir. BAP R. 8012–1(b).

#### B. Violation of Rule 9011(b)

■ Rule 9011(b)[2] provides that an attorney or *pro se* party who presents a motion to the court certifies that the mo-

---

**2.** Congress amended Rule 9011 to conform to the 1993 amendment to Fed.R.Civ.P. 11. The effect of the amendments was to allow rather than require courts to impose sanctions after finding that a person had violated Rule 9011 or Fed.R.Civ.P. 11. *Silva v. Witschen*, 19 F.3d 725, 728 n. 2 (1st Cir.1994). As such,

case law discussing the old version of the rules are applicable here, except, of course, to the extent that the pre-amendment cases discuss the imposition of sanctions as mandatory rather than discretionary upon a finding that Rule 9011 or Fed.R.Civ.P. was violated.

tion is not presented for an improper purpose, that its arguments are warranted by existing law or by nonfrivolous arguments to modify existing law, and that factual assertions (or denials thereof) are supported by evidence. Fed. R. Bankr.P. 9011(b). The purpose of Rule 11 is to deter abusive litigation tactics and streamline the litigation process by lessening frivolous claims. *See Aetna Casualty & Surety Co. v. Kellogg*, 856 F.Supp. 25, 32 (D.N.H.1994) (discussing purpose of Fed. R.Civ.P. 11).

■ Because Rule 9011 is derived from Federal Rule of Civil Procedure 11, the First Circuit has explained that "Rule 11 jurisprudence is largely transferable to Rule 9011 cases." *Featherston v. Goldman (In re D.C. Sullivan Co.)*, 843 F.2d 596, 598 (1st Cir.1988). Although neither the Rule nor case law enumerates an exhaustive list of factors a court should consider in deciding whether to impose sanctions or what type of sanctions to impose, the following is a list of factors that "may in a particular case be proper considerations":

> whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*Dibbs v. Gonsalves*, 921 F.Supp. 44, 55 (D.P.R.1996) (quoting Advisory Committee Notes to Fed.R.Civ.P. 11).

### 1. Not Warranted by Existing Law or Nonfrivolous Argument to Extend Existing Law

#### a. *Not Warranted by Existing Law*

■ A legal argument is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authoritative precedent, unless the pleading plainly argues for a reversal or change of law and presents a nonfrivolous argument to support that position. *In re Willis Furniture Co.*, 148 B.R. 691, 694 (Bankr. D.Mass.1992); *Dibbs v. Gonsalves*, 921 F.Supp. at 47–49; *Aetna Casualty*, 856 F.Supp. at 32–33; *Collier on Bankruptcy*, ¶ 9011.04[7][a].

In *Willis Furniture*, the bankruptcy court concluded that an emergency motion to modify a court order in light of a recent Court of Appeals decision was not warranted by existing law where there was "nothing in the present motion consistent with the opinion of the Court of Appeals." *In re Willis Furniture*, 148 B.R. at 694. In *Dibbs*, the district court concluded that a plaintiff's claims that her former husband violated RICO were not warranted by existing law where the complaint failed to state a claim for which relief could be granted, and where the claims were barred by *res judicata. Dibbs*, 921 F.Supp. at 47–49. In *Aetna Casualty*, the district court concluded that, under the circumstances, affirmative defenses were not warranted by existing law where the defendant raised them "at the eleventh hour" without explaining why the defenses were not waived. *Aetna Casualty*, 856 F.Supp. at 32–33. There, the circumstances included the "equally frivolous" nature of the defendant's remaining arguments. *Id.*

■ However, a legal argument need not ultimately prevail in order to be warranted by existing law. *Associated Indem. Corp. v. Fairchild Indus., Inc.,* 961 F.2d 32 (2d Cir.1992); *Collier on Bankruptcy,* ¶ 9011.04[7][a]. In particular, courts generally do not conclude that an unsuccessful argument is not warranted by existing law where the argument involves unsettled or highly complex law. *New England Health Care Employees Union v. Fall River Nursing Home, Inc.,* 802 F.Supp. 674, 680 (D.R.I.1992). In *New England Health Care,* the district court rejected the plaintiff's argument that the defendant's failed venue and personal jurisdiction arguments were not warranted by existing law because that area of law is highly complex. *Id.* The court described personal jurisdiction doctrine as "a riddle wrapped in a mystery inside an enigma." *Id.* (quoting *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 462 (1st Cir.1990)).

■ Here, the Motion to Disgorge asked the court to disgorge Estate Counsel's fees on the theory that Estate Counsel were "creditors" of the estate and therefore had interests adverse to the estate and were not "disinterested persons" as required by §§ 327 and 1103. The argument rested on the premise that "this Court has determined that [Estate Counsel] became creditors to the Chapter 11 estate while representing the estate" and cited § 101(14)'s definition of "disinterested person" to support its conclusion that disgorgement was required. In his Response to Estate Counsel's Opposition to the Motion to Disgorge, the Appellant stated that the Court had ruled that Estate Counsel were "creditors" and that the ruling was now the "law of the case." These arguments are entirely without merit.

As an initial point, it is important to clarify that the bankruptcy court did not "determine" or "rule" that Estate Counsel were "creditors" as defined in § 101(10). The Appellant is referring to a sentence in the court's order denying the Motion to Revoke, which stated, in the context of explaining that sale proceeds were indeed being held for the benefit of estate creditors: "Administrative claimants are also creditors who are entitled to share in the proceeds held by the estate." The statement thereby clearly identified Estate Counsel as administrative claimants, and explained that administrative claimants were creditors who were entitled to payment from the sale proceeds. The statement certainly did not, as the Motion to Disgorge and Response argued, *determine* or *rule* that Estate Counsel were "creditors" for purposes of the "disinterested persons" test, nor did it establish "law of the case" to that effect. On the contrary, by identifying Estate Counsel as "administrative claimants," the court made clear that Estate Counsel held claims of a nature different from other creditors. The bankruptcy court was therefore correct in stating at the sanction hearing that the Appellant had "twisted" the court's language in arguing that the court had determined and ruled that Estate Counsel were creditors.

Furthermore, Estate Counsel are in fact not "creditors" as the term is defined in the Bankruptcy Code. Section 101(10) defines a creditor as an entity that has a claim against the debtor arising at or before the debtor's filing of the bankruptcy petition and of a kind specified in §§ 348(d), 502(f), 502(g), 502(h), or 502(i). *See* 11 U.S.C. § 101(10). Here, Estate Counsel's fees and expenses were not claims against the debtor arising from any of these sections; instead, they were administrative expenses arising out of § 503(b). *See* 11 U.S.C. 503(b). Entities such as Estate Counsel with administrative expense claims are therefore excluded

from the definition of "creditor." *See id.* As Estate Counsel are not "creditors" as defined in § 101(10), the prohibition against employment of creditors for the "disinterested persons" test does not apply to them.[3] *See* 11 U.S.C. § 101(14)(A); 11 U.S.C. § 327(a); 11 U.S.C. § 1103(b).

Moreover, the First Circuit has explained that § 327(a) does not foreclose the employment of an attorney to whom the debtor becomes indebted after filing the bankruptcy petition. *In re Martin,* 817 F.2d 175, 180 (1st Cir.1987). The First Circuit reasoned that to conclude otherwise would be absurd, as it would "virtually eliminate any possibility of legal assistance for a debtor in possession, except under a cash-and-carry arrangement or on a *pro bono* basis." *Id.* Here, Estate Counsel's fees and costs were incurred after commencement of the Chapter 11 case. Conversion of the case from Chapter 11 to Chapter 7 did not render Estate Counsel's administrative expenses pre-petition claims. Upon conversion of a case from Chapter 11 to Chapter 7, claims arising under § 503(b) while the case was in Chapter 11 will not be treated as pre-petition claims, but will retain administrative expense status. *See* 11 U.S.C. § 348(d).[4]

The Appellant's argument that Estate Counsel hold interests adverse to the estate is equally lacking in substance and merit, again providing virtually no legal support for his assertions. The First Circuit has explained that the tests for "disinterested person" and lack of adverse interest "telescope into what amounts to a single hallmark." *In re Martin,* 817 F.2d at 180. For the reasons discussed above, therefore, the Appellant's argument that Estate Counsel hold interests adverse to the estate is not warranted by existing law.

The arguments presented in the Motion to Disgorge are plainly foreclosed by the Bankruptcy Code and by well-established bankruptcy principles. The Bankruptcy Code makes clear that Estate Counsel are not "creditors" under § 101(10), and that their employment, therefore, did not violate the "disinterested persons" or adverse interest test under §§ 327 and 1103(b). Moreover, none of these legal concepts are unsettled or highly complex. Therefore, the bankruptcy court did not err in concluding that the legal contentions contained in the Motion to Disgorge were not warranted by existing law.

### b. *Not Warranted by Nonfrivolous Argument to Extend Existing Law*

An argument for an extension or modification of existing law is frivolous if no reasonable argument can be advanced. *Collier on Bankruptcy,* ¶ 9011.04[7][b]. The court should take into account the extent to which a litigant has researched the issues and found some support for his theories in secondary materials. *Id.* An argument that has been accepted by other courts is probably not a frivolous argument. *Id.*

---

**3.** Section 101(14) provides numerous criteria by which to judge whether a professional is a "disinterested person." However, we need only concern itself with the first criterion of "not a creditor" as the Appellant rested his argument there.

**4.** Section 348(d) provides: "[a] claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 [. . .], *other than a claim specified in section 503(b) of this title,* shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d) (emphasis added).

■ Here, the Motion to Disgorge did not acknowledge that its arguments broke from well-established principles, nor did it argue for the extension or modification of existing law. Instead, the Motion provided virtually no legal or factual support for its request that the court disgorge Estate Counsel's fees. While the Response provided more elaborate reasoning, again there was virtually no legal support. Nowhere in the Motion or the Response does the Appellant seek the extension or modification of existing law. Therefore, the court did not err in concluding that the arguments contained therein are not warranted by the nonfrivolous argument for extension or modification of existing law.

### 2. Improper Purpose

■ Courts generally apply an objective standard to determine whether a document was presented for an improper purpose. *Collier on Bankruptcy,* ¶ 9011.04[8][c]. Courts may infer the purpose of a filing from the consequences of the motion, such as delaying the proceedings or creating "a persistent pattern of clearly abusive litigation." *Bay State Towing Co. v. Barge Am. 21,* 899 F.2d 129 (1st Cir.1990); *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1476 (9th Cir.1988).

■ Here, the bankruptcy court found that the Appellant filed the Motion to Disgorge for the improper purpose of harassing estate functionaries and depleting the estate. The court explained that Estate Counsel had complained that the Appellant was filing meritless pleadings, and that the court itself was "struck" in particular by the Motion to Vacate and the Motion to Disgorge. Without making specific findings regarding the Motion to Vacate, the court explained that after reviewing the Appellant's Motion to Vacate and related materials:

it became clear to me that that wasn't right, that what you said wasn't right, and I denied the [Motion to Vacate], I canceled the evidentiary hearing so that you wouldn't have to come out, but it wasn't without a little bit of annoyance that it had all gotten that far before something that ought to have been picked up early was picked up. [ . . . ] I did not issue an order to show cause on that one because you were *pro se.*

The court further explained that the Appellant's subsequent Motion to Disgorge was not only without merit, but was "based on a twisting" of the court's use of the word "creditor" in the order denying the Motion to Vacate. The court concluded that the Appellant was operating from a "position of safety" by filing pleadings based on his own impressions of the case without consulting an attorney, which depleted the estate and reduced the dividend to unsecured creditors as Estate Counsel were required to incur fees responding to the pleadings. The court explained that it wanted to make sure the Appellant understood it was no longer safe to file these kinds of frivolous matters.

The Appellant disputes this finding by arguing that the Motion to Disgorge had merit. However, as discussed above, neither the Motion nor the response had merit. Likewise, the Motion to Revoke was without merit, and the Appellant himself has even conceded that it was "wrong."

There is, therefore, evidence to support the court's finding that the Motion to Disgorge was filed for the improper purpose of harassing estate functionaries, and that the court's account of the evidence is plausible in light of the record reviewed in its entirety. Nothing in the record indicates that a mistake has been committed. As such, the bankruptcy court's finding that the Motion to Disgorge was filed for an improper purpose was not clearly errone-

ous. *See Anderson v. Bessemer City*, 470 U.S. at 573, 105 S.Ct. 1504; *In re Cabral*, 285 B.R. at 571; *In re Neponset River Paper Co.*, 231 B.R. at 830.

## C. Appropriateness of Sanction

 Once a court determines that a person violated Rule 9011(b), it may impose an "appropriate sanction." Fed. R. Bankr.P. 9011(c). The sanction generally serves a dual purpose of deterrence and compensation. *1095 Commonwealth Corp.*, 236 B.R. at 538. With respect to deterrence, the court must limit the sanction to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr.P. 9011(c)(2). With respect to compensation, reasonable costs incurred as a result of the sanctionable conduct may appropriately form the basis of a Rule 9011 sanction. *1095 Commonwealth Corp.*, 236 B.R. at 538. In reviewing the appropriateness of a Rule 9011 sanction, the Panel should "defer, within broad limits, to the bankruptcy court's exercise of its informed discretion," yet still "be careful not merely to rubber stamp" the decision below. *Id.* (quoting *Navarro–Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir.1992)).

 Here, the Appellant does not argue that the $2,500 sanction amount is inappropriate, nor does the record reflect that the bankruptcy court abused its discretion in imposing sanctions in that amount. The record reflects that the Appellant has a history of filing meritless pleadings, which Estate Counsel estimates has cost the estate almost $32,000 to defend. Furthermore, the bankruptcy court stated that it was sanctioning the Appellant to deter him from continuing to file frivolous pleadings that disrupted the proceedings and drained assets from the estate. In fact, the court rejected Estate Counsel's request that the court enjoin the Appellant from filing any further pleadings in the case; the court instead invited the Appellant to file any nonfrivolous pleadings, but warned him that future frivolous pleadings could result in sanctions of a much higher amount. Therefore, the $2,500 amount appears to be an appropriate sanction as it satisfies both purposes of deterrence and compensation. *See id.* Accordingly, in imposing the $2,500 sanction, the bankruptcy court did not ignore a material factor deserving significant weight, rely upon an improper factor, or make a serious mistake in weighing proper factors. *See Colon*, 265 B.R. at 639. Thus, the bankruptcy court did not abuse its discretion in imposing the $2,500 sanction.

## CONCLUSION

The bankruptcy court did not err in concluding that the arguments presented in the Motion to Disgorge were not warranted by existing law or by nonfrivolous argument to extend or modify existing law. Moreover, the bankruptcy court's finding that the Motion to Disgorge was filed for the improper purpose of harassing estate functionaries was not clearly erroneous. Lastly, the bankruptcy court did not abuse its discretion by sanctioning the Appellant nor by ordering him to pay $2,500 to the Trustee. Accordingly, the Order is **AFFIRMED**.